UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **EPIC TECH, LLC AND WINTER SKY, LLC,** § § § | |
| *Plaintiffs* § § | |
| **v.** § § | Case No. 1:20-CV-577-LY |
| **ARNO RESOURCES, LLC,** § § § | |
| *Defendant* § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant's Motion to Dismiss or Transfer, filed June 18, 2020 (Dkt. 25), Plaintiff's Response to Defendant's Motion to Dismiss or Transfer, filed July 2, 2020 (Dkt. 29), and Defendant's Reply in Support of Motion to Dismiss or Transfer, filed July 8, 2020 (Dkt. 31). On July 2, 2020, the District Court referred the motion to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

**I.   Background**

The parties in this case and their predecessors in interest have been involved in various disputes and lawsuits regarding their gaming software agreement since 2006. On August 13, 2004, Customs Game Design, Inc. ("CGD"), a Texas corporation that designs and develops computer software applications for casino gaming systems, entered into a written agreement ("Agreement") with Gateway Gaming, LLC ("Gateway"), a South Carolina gaming company. Dkt. 29-2 at 1. CGD

agreed to develop a video gaming system for Gateway for a fee of $447,000. *Id.* at 8. The Agreement further required CGD to complete and develop five separate games, for a total cost of $408,400. *Id.* at 9. CGD also gave Gateway a license for CGD's proprietary software ("Software"), which was required to operate the gaming applications. *Id.* at 3. The Agreement was terminable if Gateway failed to make its installment payments or hired any current CGD employee or any former CGD employee within 180 days of termination. *Id.* The gaming system and games were to be developed by CGD in installments, beginning in August 2004 and ending in May 2005. *Id.* at 6. CGD contends that it permitted Gateway to use its license from 2004 through 2012. Dkt. 25 at 2. Gateway contends that the Agreement terminated on December 31, 2005. Dkt. 29 at 2.

On May 22, 2006, CGD filed suit in Texas state court against Gateway and several individual defendants, alleging wrongful termination of the Agreement, wrongful solicitation and employment of CGD's former employees, tortious interference, and breach of contract. *See Custom Game Design v. Gateway Gaming*, No. 06-04909-K (192nd Dist. Ct., Dallas County, Tex. May 22, 2006). On May 31, 2006, Gateway filed its own lawsuit in the United States District Court for the District of South Carolina, alleging that CGD had breached the Agreement. *See Gateway Gaming v. Custom Game Design*, No. CIVA 8:06-01649 HMH, 2006 WL 2781043, at *1 (D.S.C. May 31, 2006). Gateway sought a declaration that the Agreement terminated on December 31, 2005, and it was not liable to CGD for any alleged solicitation of CGD's former employees. CGD and Gateway settled both the Texas and South Carolina Lawsuits on April 25, 2007. Dkt. 29-3.

Gateway was dissolved on January 1, 2013. Its principals, Bob Mosely, Sr. and J.M. Caldwell, transferred Gateway's assets to Red Rock Investments, LLC, which in turn transferred the assets to Epic Tech, LLC, Winter Sky, LLC, and Frontier Software Systems, LLC. CGD contends that "[t]he assignments constituted a fraudulent scheme by which Gateway Gaming's Principals could

2

and did continue to profit off of CGD's Software, with the assistance of their family members and close associates, despite being prohibited from assigning Gateway Gaming's license therein." *Id.* at 3. CGD contends that under the Agreement, none of Gateway's successors had a right to use its license and Software without CGD's written permission. Nonetheless, CGD alleges that Gateway's successors have unlawfully used the Software without its permission and without paying any royalties.

On August 14, 2013, Frontier Software Systems, LLC, Mosely, and Caldwell were indicted in the United States District Court for the District of South Carolina for illegal gambling, in violation of 18 U.S.C. §§ 1955 (Count One), and money laundering, in violation of 18 U.S.C. § 1956(h) (Count Two). *See United States v. Mosley*, 6:13-CR-747-BHH (D.S.C. Aug. 14, 2013), at Dkt. 1.[1] All defendants pled guilty to one count of the Indictment. The district court sentenced them to time served and ordered them to forfeit certain money and other property. *Id.* at Dkts. 475, 490, 494.

On February 28, 2017, CGD entered into a software license agreement with Arno Resources, LLC ("Arno"),[2] in which CGD agreed to grant, convey, and assign all of its rights, title, and interest to the Software, including the right to bring suit arising from misuse of the Software. Arno alleges that it became aware that Gateway's successors in interest, Epic Tech and Winter Sky,[3] continue to unlawfully use the Software and source code developed, written, and licensed by CGD in the United States and Europe without authorization, without license, and without paying Arno any royalty or otherwise compensating it for the use of the source code and Software. In addition, Arno alleges that Epic Tech and Winter Sky are licensing the Software and source codes to other third

---

[1] Although the United States initially included Gateway as a defendant, it subsequently dismissed Gateway from the indictment because it no longer was a legal entity. *Id.* at Dkt. 489.

[2] Arno is a Texas corporation and maintains its principal place of business in Austin, Texas.

[3] Epic Tech and Winter Sky are Delaware companies and have their principal places of business in the State of Georgia.

parties for their own financial benefit, without obtaining Arno's consent or paying it any compensation.

On May 13, 2020, Arno's counsel sent pre-suit demand letters to Epic Tech and Winter Sky, accusing them of unauthorized use of the Software. Dkt. 1-1 at 52. The demand letters stated that Arno "intends to pursue all remedies at law and equity against all parties named in the Complaint," but noted that counsel was authorized "to discuss potential settlement possibilities with all parties before filing suit in an effort to resolve this matter pre-suit." *Id.* Arno's counsel also included a copy of the draft complaint that it intended to file in the Northern District of Georgia if the case was not settled. Arno's counsel asked Epic Tech and Winter Sky's counsel to respond to them by May 22, 2020 "should it wish to discuss a potential pre-suit settlement." *Id.*

On May 26, 2020, Epic Tech and Winter Sky's counsel emailed Arno's counsel to let him know that he would "review with the client and get back to you with our position." Dkt. 25-1 at 5. Three days later, Epic Tech and Winter Sky filed this declaratory judgment action in Travis County District Court, seeking a determination that (1) the Development Agreement terminated under its own terms on or before December 31, 2005; (2) Gateway purchased and owns the right to all software developed pursuant to the Development Agreement, including all software and source code developed concerning the Gateway Gaming System; and (3) all of Arno's claims were released by the Settlement Agreement. *See Epic Tech v. Arno Resources*, D-1-GN-20-02870 (261st Dist. Ct., Travis County, Tex. May 29, 2020). On May 31, 2020, Arno removed this case to this Court on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1441(b). Dkt. 1.

On June 17, 2020, Arno filed its lawsuit in the Northern District of Georgia against Epic Tech, Winter Sky, related entities, and their principals, alleging claims for common law and Georgia statutory unfair competition, unjust enrichment, violations of Georgia's Uniform Deceptive Trade

Practices Act, civil conspiracy, aiding and abetting a breach of contract through fraud, and injunctive relief. *See Arno v. Epic Tech*, No. 1:20-CV-2540-CAP (N.D. Ga. June 17, 2020).

In its Motion to Dismiss, Arno does not dispute that Epic Tech and Winter Sky filed this declaratory judgment action before it filed its lawsuit in the Northern District of Georgia. Arno argues, however, that Epic Tech and Winter Sky improperly filed this action to deprive Arno Resources of its chosen form. Arno argues that the Court should exercise its discretion and dismiss this declaratory judgment action under the anticipatory exception to the first-to-file rule. In the alternative, Arno argues that the Court should decline to exercise jurisdiction over this action pursuant to the factors set out in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994), or transfer the case to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).

Epic Tech and Winter Sky argue that the Court should follow the first-to-file rule and maintain this action in this Court. They contend that Arno has failed to show that Epic Tech and Winter Sky acted in an "improper or abusive manner" in filing suit. Dkt. 29 at 1. Epic Tech and Winter Sky allege that they "filed this action in good faith, seeking to efficiently dismiss baseless claims threatened by Texas residents concerning their respective rights under a settlement agreement governed by Texas law." *Id.*

## II. Legal Standards

### A. Declaratory Judgment Actions

Under the Federal Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).[4] "The district court, however, is not required to provide declaratory judgment relief, and it is a matter for the

---

[4] Although Epic Tech and Winter Sky seek declaratory relief pursuant to the Texas Declaratory Judgment Act, the removal to federal court causes the claim to be viewed as brought under the Federal Declaratory Judgment Act. *Edionwe v. Bailey*, 860 F.3d 287, 294 n.2 (5th Cir. 2017).

district court's sound discretion whether to decide a declaratory judgment action." *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). In essence, "the Declaratory Judgment Act gives the court a choice, not a command." *Puritan Fashions*, 706 F.2d at 601.

In determining whether to exercise its discretion to hear a declaratory judgment action, "[o]f course . . . the district courts may not decline on the basis of whim or personal disinclination." *Id.* A district court, however, may refuse declaratory relief for a variety of reasons, including:

> the matter may be before a state court capable of resolving all the issues between the parties; the declaratory complaint may have anticipated another suit and may allow forum shopping; the complaint may allow the plaintiff to gain precedence in time or forum; or it may inconvenience the parties or the witnesses.

*Psarianos v. Standard Marine, Ltd.*, 12 F.3d 461, 463-64 (5th Cir. 1994). "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Wilton*, 515 U.S. at 288.

### B. The First-to-File Rule

"The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 729 (5th Cir. 1985). "As between federal district courts . . . the general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). Under this rule, when cases overlap on substantially similar issues, the cases should be consolidated in the "jurisdiction first seized of the issues." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 n.6 (5th Cir. 1971). The concern is "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Gulf Coast*, 751 F.2d at 729. "To avoid these ills, a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court." *Id.* The first-to-file rule is a discretionary doctrine. *Cadle*, 174 F.3d at 603.

The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). Absent compelling circumstances, "the Court initially seized of a controversy should be the one to decide whether it will try the case." *Mann*, 439 F.2d at 407.

The rule does not require the cases to be identical; rather, the crucial inquiry is substantial overlap. *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011). In deciding if there is substantial overlap between cases, the Fifth Circuit looks at factors such as whether "the core issue" is the same, or if much of the proof adduced likely would be identical. *Id.* "Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Id.* If the court finds that the cases

7

substantially overlap, it may choose to stay, transfer, or dismiss the duplicative later-filed action. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).

### III.    Analysis

The undersigned recommends that the District Court decline to exercise jurisdiction over this declaratory judgment action under both the anticipatory filing exception to the first-to-file rule and its broad discretion under the Declaratory Judgment Act. Although the filing of every case requires forum selection, the Court finds that this lawsuit is an example of the "procedural fencing" the Fifth Circuit criticized in *Puritan Fashions*, 706 F.2d at 602 ("Anticipatory suits are disfavored because they are an aspect of forum-shopping.").

One recognized exception to the first-to-file rule is when "a party files a declaratory judgment action in anticipation of a suit by its adversary, which can create an opportunity for forum-shopping." *True View*, 2016 WL 755494, at *6. The Fifth Circuit has stated that "a proper factor to consider in dismissing a declaratory judgment suit is whether the suit was filed in anticipation of another and therefore was being used for the purpose of forum-shopping." *Pac. Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804 (5th Cir. 1985) (citing *Puritan Fashions*, 706 F.2d at 602 & n.3). "In such cases, application of the first-to-file rule may deprive a potential plaintiff of his choice of forum and create disincentives to responsible litigation by rewarding the winner of a race to the courthouse." *Doubletree Partners, L.P. v. Land Am. Am. Title Co.*, No. 3-08-CV-1547-O, 2008 WL 5119599, at *3 (N.D. Tex. Dec. 3, 2008). While "declaratory judgment suits are routinely filed in anticipation of other litigation," *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 391 (5th Cir. 2003), "courts in the Fifth Circuit have concluded that an anticipatory suit initiated for the purpose of obtaining a favored forum constitutes a compelling circumstance

8

that justifies a deviation from the first-to-file rule." *Twin City Ins. Co. v. Key Energy Servs., Inc.*, No. H-09-0352, 2009 WL 1544255, at *5 (S.D. Tex. June 2, 2009).[5]

In determining whether to apply the anticipatory filing exception, "courts scrutinize the parties' activities prior to filing of a suit." *Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. 3-07-CV-2183-M, 2008 WL 3890495, at *4 (N.D. Tex. Aug. 22, 2008). Courts should consider whether the first-filing party acted in bad faith by inducing the other party to delay filing a lawsuit. *Novak Druce Connolly Bove & Quigg, LLP v. Arochi*, No. H-18-3490, 2019 WL 4222700, at *2 (S.D. Tex. Sept. 5, 2019). They also should take into account that "the primary reason courts have recognized the anticipatory suit exception to the first-to-file rule is to avoid penalizing a party that has attempted to settle a dispute out of court." *Twin City*, 2009 WL 1544255, at *5. "Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files an already-drafted complaint." *909 Corp. v. Vill. of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1293 (S.D. Tex. 1990) (quotation omitted). When a plaintiff files an anticipatory suit in order to avoid litigation by the defendant, "the 'true plaintiff' is divested of his right to select the proper forum." *Paragon,* 2008 WL 3890495, at *4. Therefore, "[c]ourts will generally not allow a party to select its preferred forum by filing an action for a declaratory judgment when it has notice that another party intends to file suit involving the same issues in a different forum." *Id.*

---

[5] *E.g.*, *Bedrock Logistics, LLC v. Braintree Labs., Inc.*, No. 3:16-CV-2815-M, 2017 WL 1547013, at *5 (N.D. Tex. Apr. 28, 2017) ("Courts often make an exception to the first-to-file rule when a plaintiff files an anticipatory suit."); *Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co., L.P.*, No. H-07-637, 2007 WL 5186798, at *4 (S.D. Tex. Sept. 11, 2007) ("Anticipatory lawsuits not only deprive a potential plaintiff of his choice of forum, but an anticipatory suit is also one of the compelling circumstances courts cite when declining to apply the first-filed rule.").

Consistent with these principles, in *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 664 (5th Cir. 1967), the Fifth Circuit affirmed the district court's stay of a declaratory judgment action filed in anticipation of a lawsuit filed in a different forum. In that case, the first filer filed a declaratory judgment action in the Southern District of Texas three weeks after it received a letter from the second filer that it intended to bring suit against the first filer in the Southern District of New York. The Fifth Circuit held that "Amerada's petition for declaratory judgment apparently was in anticipation of the New York suit is an equitable consideration which the district court was entitled to take into account." *Id.* at 663; *see also Cargill*, 751 F.2d at 804 (affirming dismissal of declaratory judgment action filed in anticipation of suit filed two months later); *Puritan Fashions*, 706 F.2d at 602 (affirming dismissal of insurer's declaratory judgment action, finding that "[t]here is sufficient evidence here to support the district court's conclusion that Mission's action was in anticipation of Puritan's California suit").

The facts presented here are substantially similar to those in *Paragon*, 2008 WL 3890495, at *1-5. In that case, Denver Glass Machinery, Inc. sent a letter to an alleged trademark infringer, Paragon Industries, L.P., demanding that it cease sale of its glass making machines and requesting a response by January 1, 2008. *Id.* at *1. Paragon's counsel sought an extension of time to respond, and Denver Glass extended the deadline to January 17, 2008. Instead of responding, Paragon filed a declaratory judgment action on December 28, 2007. The district court found that "[t]hese facts indicate that Paragon filed suit in anticipation of litigation by Denver Glass." *Id.* at *5. Therefore, the court held that the first-to-file rule should not apply, and that Paragon's preferred forum was entitled to no weight. *Id.*

Similarly, in *Bedrock Logistics*, 2017 WL 1547013, at *5, Braintree Laboratories, Inc. sent a demand letter to Bedrock Logistics, LLC, asserting that Bedrock had engaged in a deceptive

kickback scheme to obtain and maintain business with Braintree. Braintree gave Bedrock eleven days to consider its settlement offer. Four days later, instead of responding to Braintree, Bedrock filed suit against Braintree in federal court. Based on these facts, the court declined to apply the first-to-file rule, finding that Bedrock "filed an anticipatory action, intended to preempt Braintree from initiating the first lawsuit, as a way to forum shop." *Id.*[6]

Here, on May 13, 2020, Arno's counsel sent Epic Tech and Winter Sky pre-suit demand letters, alleging that they had engaged in "unauthorized use of certain software that our client's predecessor in interest, Custom Game Design, Inc., licensed to Gateway Gaming, Inc." Dkt. 1-1 at 52. The demand letters also enclosed a draft of the complaint to be filed in the Northern District of Georgia if the case was not settled. The letters notified Epic Tech and Winter Sky that Arno was authorized "to discuss potential settlement possibilities with all parties before filing suit in an effort to resolve this matter pre-suit," and asked Epic Tech and Winter Sky to contact Arno's counsel "no later than May 22, 2020, should it wish to discuss a potential pre-suit settlement." *Id.* On May 26, 2020, Epic Tech and Winter Sky's counsel notified Arno's counsel that he would review the complaint with the client "and get back to you with our position." Dkt. 25-1 at 5. Three days later, Epic Tech and Winter Sky filed this declaratory judgment action.

---

[6] *See also Novak*, 2019 WL 4222700, at *4 (holding that first-to-file rule did not apply where first filer filed declaratory judgment action one day before adversary had notified that it was planning on filing lawsuit); *Grey Wolf*, 2007 WL 5186798, at *4 ("The Court declines to permit Plaintiffs to secure a more favorable forum by filing a declaratory judgment suit in Texas upon receiving notice that Grey Wolf intends to pursue litigation involving the same issues in Oklahoma."); *Chapa v. Mitchell*, No. A-05-CV-769-JN, 2005 WL 2978396, at *1 (W.D. Tex. Nov. 4, 2005) (finding that "compelling circumstances" were present and warranted the dismissal of the first-filed action in favor of the second-filed action); *Kinetic Concepts, Inc. v. Connetics Corp.*, No. SA-04-CA-0237-XR, 2004 WL 2026812, at *4 (W.D. Tex. Sept. 8, 2004) (dismissing declaratory judgment action where first filer filed action after it had notice that adverse party intended to file suit involving the same issues in a different forum); *Peyman v. Optobionics Merger Corp.*, No. 02-3332, 2003 WL 193443, at *3 (E.D. La. Jan. 23, 2003) (finding that first to file rule should not apply where plaintiff misused the Declaratory Judgment Act to gain a procedural advantage); *Johnson Bros. Corp. v. Int'l Bhd. of Painters*, 861 F. Supp. 28, 29-30 (M.D. La. 1994) (finding that compelling circumstances existed to justify failing to adhere to "first-filed" rule when declaratory action is filed in anticipation of another lawsuit to secure more favorable forum).

Epic Tech and Winter Sky contend that they did not engage in improper or abusive tactics, and that "the May 13 threat was little more than extortion by a vexatious attorney and his vindictive client." Dkt. 29 at 5. They do not, however, dispute any of the relevant facts. Nor do they contest that they can raise the same arguments relating to the settlement agreement between the parties' predecessors-in-interest in the Northern District of Georgia. *See Amerada*, 381 F.2d at 663 (noting that declaratory judgment plaintiff was "not in the position of one who cannot obtain an adjudication of its legal rights; the only question here is in which of two jurisdictions should the adjudication take place."). Based on these facts, the Court finds that Epic Tech and Winter Sky filed this declaratory judgment action in anticipation of Arno's suit in the Northern District of Georgia and to deprive Arno of its chosen forum.

The Fifth Circuit does not favor races to the courthouse. *See Puritan Fashions*, 706 F.2d at 602 n.3. Numerous courts have held that "a declaratory claim should be dismissed if it was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction." *Bolingbrook Police*, 741 F. Supp. at 1292; *see also, e.g., Puritan Fashions*, 706 F.2d at 602-03 (affirming dismissal of anticipatory declaratory judgment action); *Chapa*, 2005 WL 2978396, at *3; *Kinetic Concepts*, 2004 WL 2026812, at *4; *Peyman*, 2003 WL 193443, at *3; *Johnson Bros.*, 861 F. Supp. at 30.

Based on the record as a whole, the Court finds that Epic Tech and Winter Sky filed this declaratory judgment action in anticipation of Arno filing its lawsuit in the Northern District of Georgia in an attempt to deprive Arno of its chosen forum. The undersigned therefore recommends that the District Court decline to exercise jurisdiction and grant Arno's Motion to Dismiss.[7]

---

[7] Because the Court finds that this case should be dismissed under the anticipatory filing exception and its discretion under the Declaratory Judgment Act, the Court need not address Arno's alternative arguments.

## IV.     Recommendation

The undersigned **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Dismiss (Dkt. 25) and **DISMISS** this lawsuit in its entirety.

It is **FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the Honorable Lee Yeakel.

## V.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on September 4, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE